**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: ALLURA FIBER CEMENT SIDING LITIGATION**<br>This Document Applies to:  All Cases | Civil Action No.: 2:19-mn-02886-DCN<br><br>**MDL No. 2886**<br><br>Honorable David C. Norton |

-------------------------------------------------------------------------------------------------
**Final Judgment and Order**
-------------------------------------------------------------------------------------------------

This matter is before the Court on Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement (ECF No. 30) that Plaintiffs Amanda Lowe, Krista Krouse, Christopher Krouse, Donna Johns, Jameson D. Storm, Andrew Harmel, Antonetta Luongo, and Robert Severance (the "Settling Plaintiffs") have reached with Defendant Plycem USA, LLC and Elementia USA, Inc. ("Plycem" or "Defendant"), and Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Class Representatives (ECF No. 27).

In connection with those Motions, the Court has considered and reviewed:  (1) Plaintiffs' Unopposed Motion for Final Approval of the Settlement (the "Motion"); (2) the Settlement Agreement and Release and the exhibits attached thereto (the "Settlement Agreement"); (3) Defendants' Memorandum in Support of Approval of Class Action Settlement; and (4) Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Service Awards, along with its accompanying declaration.  In addition, the Court has considered the arguments of counsel as well as the pleadings and record in this case.  On May

17, 2021, the Court held a Final Fairness Hearing, including a hearing on class certification. There were no objections and no opposition from any Settlement Class Members or parties to the Settlement Agreement.

Having considered the foregoing materials and information, this Court finds that the Settlement Agreement and the Notice Plan comply with Rule 23 of the Federal Rules of Civil Procedure, and that the Settlement Agreement is fair, reasonable and adequate. The Court also approves Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Service Awards.

## I.     FINAL APPROVAL OF CLASS AND CLASS ACTION SETTLEMENT

The factual and legal background for these claims, the Settlement Agreement and the Notice Plan are set out in detail in the Preliminary Approval Order (ECF. No. 25) as well as the Unopposed Motion for Final Approval of the Class Action Settlement and the attachments thereto.

In summary, the Defendants are contributing a total of Twelve-Million, Five-Hundred-Thousand Dollars ($12,500,000.00) into the Settlement Fund in exchange for a full release from all Settlement Class Members. The Settlement Fund will be used to make payments to Settlement Class Members with Eligible Claims as set forth in the Settlement Agreement. The Settlement Fund will also be used to pay approved attorneys' fees, litigation costs, incentive payments to the Settling Plaintiffs, and administrative costs.

## II.    NOTICE AND SETTLEMENT ADMINISTRATION

Pursuant to the Preliminary Approval Order and the manner and form of notice set forth in the Settlement Agreement (the "Notice Plan"), the Claims Administrator, Angeion, sent 2,067 notices via first-class mail and 42 notices via email to homeowners, and also provided direct notice to dealers, builders, and retailers. *See* ECF No. 30-1, Declaration of Steven Weisbrot of

Angeion Group LLC Re: Notice, at ¶ 9.  Notice was also provided by a comprehensive media program, which included internet banner ads (resulting in 33,584,782 ad impressions served, exceeding the targeted number of impressions), a social media component via Facebook (resulting in 23,869,366 impressions served, also exceeding the targeted number of impressions) and publication via People Magazine.  *See id.* at ¶ 17.  The Notice Plan reached approximately 79.62% of the target audience, with an average frequency of 14.31 times each, which is independent of the direct notice efforts.  *See id.* at 19.

The Notice Plan also included a separate advertising and social media campaign specifically targeted to industry professionals, resulting in an additional 1,215,104 digital ad impressions and 3,201,690 Facebook impressions targeted to industry professionals, as well as notices published in the February 2021 edition of *Builder* and the February 2021 and March 2021 editions of the *Journal of Light Construction*.  *See id.* at ¶¶ 20-21.  An additional 625,078 digital ad impressions were served on trade-specific platforms.  *See id.* at ¶ 22.  Angeion also launched the website www.PlycemSidingSettlement.com, which had been visited by 103,420 visitors as of April 12, 2021.  *See id.* at ¶¶ 23, 25.

The Court finds that the Notice Plan has been faithfully carried out and constitutes the best practicable notice to Settlement Class Members under the circumstances.  It was reasonably calculated to apprise Settlement Class Members of:  (1) the pendency of this class action; (2) their right to exclude themselves; (3) their right to object; (4) their right to appear at the fairness hearing; and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action.

As such the Courts finds that the Notice Plan fully satisfies the requirements of the Federal Rules of Civil Procedure and due process and provided sufficient notice to bind all Settlement Class Members, regardless of whether any individual member received actual notice.

## III.    CLASS CERTIFICATION

The Court previously found that the requirements of Rule 23(a) and 23(b)(3) have been satisfied in this Action when conditionally certifying the Settlement Class in its Preliminary Approval Order.  ECF No. 25 at 3-5.  The Court incorporates its findings from the Preliminary Approval Order and finds that the Settlement Class continues to meet the requirements of Rule 23(a) and 23(b)(3), and therefore the class is unconditionally certified for purposes of this Settlement.

## IV.    FAIRNESS, REASONABLENESS, AND ADEQUACY

The Court's function in assessing a proposed class settlement is to determine whether it is fair, reasonable, and adequate to class members, in light of the general judicial policy favoring settlement.  *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583, 2016 U.S. Dist. LEXIS 187745, at *16 (D.S.C. May 26, 2016) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999)) (internal quotations omitted).

There is a presumption of fairness, reasonableness, and adequacy when a class settlement is achieved through arms-length negotiations between experienced and capable counsel after meaningful discovery.  *Reed*, 2016 U.S. Dist. LEXIS 187745, at *17 (citing *S. Carolina Nat. Bank v. Stone*, 749 F. Supp. 1419, 1424 (D.S.C. 1990)); Manual for Complex Lit. (Fourth) § 21.662 (2004)

The Fourth Circuit recognizes the following factors in assessing the Rule 23(e) standard for fair settlement negotiations:  (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding

-4-

the negotiations, and (4) the experience of counsel in the area of class action litigation. *Reed*, 2016 U.S. Dist. LEXIS 187745, at *17-18, *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991). Adequacy is determined by examining (1) the relative strength of plaintiffs' case and the difficulties of proof or the strength of defendants' defenses; (2) the anticipated duration and expense of additional litigation; and (3) the degree of opposition to the settlement as expressed through objections or opt-outs. *See Case v. French Quarter III LLC*, No. 9:12-cv-02804-DCN, 2015 WL 12851717, at *7 (D.S.C. July 27, 2015). The Court will analyze these factors to determine whether the Settlement is fair, reasonable and adequate.

### A. Fairness

The proposed Settlement was reached after more than two years of litigation, witness interviews, expert investigation and testing, product and corporate research, extensive motion briefing, exchange of written discovery requests, service of subpoenas, and review of responsive documents. Further, the Parties engaged in arm's-length negotiations over more than six months, including four days of formal mediation with Thomas J. Wills, Esq. in Charleston, South Carolina and another informal day of negotiations in Washington D.C. Counsel for both parties are highly experienced in building and other products liability class action litigation. In light of these factors, the Court finds that the Settlement is fair.

### B. Adequacy

In assessing adequacy, "the court should weigh the benefits of the settlement to the class against the strength of the defense and the expense and uncertainty of the litigation while accounting for class objections." *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-2149-MBS, 2015 WL 1314086, at * 6 (D.S.C. Mar. 23, 2015). The duration, complexity, and costs of continued litigation support approval of the proposed settlement. This case involved many difficult and novel issues that presented a significant risk of nonpayment. The claims and defenses

in this action are complex.  Plaintiffs faced the risk of being compelled to arbitration, as well as losing at class certification, summary judgment, at trial, or on appeal.  The risks and obstacles in this case are just as great as those in other building product defect class actions and this case would likely have taken years to prosecute, with the risk that there would be no recovery at all.

Further, the adequacy of the settlement when weighed against the risks and expenses of continued litigation and trial favors settlement.  The Settlement provides substantial benefits to Settlement Class Members.  If the Parties proceeded to trial, they would incur significant additional expenses, including the further payment of expert witnesses and technical consultants, along with substantial time devoted to briefing Plaintiffs' motion for class certification, *Daubert* motions, summary judgment motions, preparing for and conducting trial, post-trial motion practice, and appeal, all of which could have impacted the recovery in this action. This Settlement represents an efficient alternative to what would otherwise have been a prolonged and complex class action.

This is underscored by the fact that the Settlement Class – which could include thousands of members – has received relatively little opposition.  There are no objections and only 19 opt-outs were filed –a fraction of the size of the total Settlement Class.

V.     **FINAL APPROVAL OF CLASS COUNSEL FEES AND COSTS AND INCENTIVE FEES TO SETTLEMENT PLAINTIFFS.**

The Parties' Settlement Agreement permits for application of attorneys' fees and reimbursement of costs of up to 33% of the fund ($4,125,000.00).  Plaintiffs' counsel requests an amount lower than permitted:  $4,102,771.46 or 32.8% of the $12,500,000.00 common fund.  Of the collective amount requested, $4,000,000.00 comprises the Plaintiffs' fee request.  Plaintiffs request that the fee be paid on a schedule that corresponds with the common fund payments as follows: (1) Class Representative Service Awards, $2,000,000.00 in attorneys' fees, and

reimbursement of costs to be paid within 30 days of the date of this Order; (2) $1,000,000.00 in attorneys' fees on September 15, 2021; and (3) $1,000,000.00 on January 15, 2021.

There are two general methods for assessing awards of attorney's fees in class action cases: (1) the percentage-of-the-fund method set forth in *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733-34 (3d Cir. 2001) ("*Cendant*"); and (2) the lodestar method, following standards adopted in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226-27 (4th Cir. 1978) ("*Barber*").

**1. Application of the Percentage of the Fund Method Supports the Award of Attorneys' Fees.**

The vast majority of courts use the percentage of recovery method, which is advantageous because it ties the attorneys' award to the overall result achieved rather than the number of hours worked. *Robinson v. Carolina First Bank, NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 103831, at *39 (D.S.C. June 21, 2019), quoting *McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 U.S. Dist. LEXIS 112985, at *6-7 (D.S.C. Aug. 26, 2015) (citing *Loudermilk Servs., Inc. v. Marathon Petroleum Co., LLC*, 623 F. Supp. 2d 713, 717-18 (S.D. W. Va. 2009)).

Courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund are reasonable. *See, e.g., Chrismon v. Pizza*, No. 5:19-cv- 155-BO, 2020 U.S. Dist. LEXIS 119873, *12 (E.D.N.C. July 7, 2020) (collecting cases); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772 at *8 (D. Md. Jan. 28, 2020) ("Contingent fees of up to one-third are common in this circuit.") (collecting cases); *Childress, et al. v. JPMorgan Chase Bank, N.A.*, Case 5:16-cv-00298-BO, D.E. 360, p. 2 (E.D.N.C. October 1, 2020). Here, the fee request of approximately 32% of the common fund is likewise reasonable in light of all pertinent factors.

Further, as detailed below, Class Counsel's fee request is reasonable in light of the seven *Cendant* factors:

(1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

Class Counsel obtained a beneficial result for class members. As detailed further in the Settlement Agreement, Settlement Class Members with Qualifying Damage to their Siding are eligible for compensation for repair and replacement products. This relief is significant. *See In re MI Windows & Doors Prods. Liab. Litig.*, MDL No. 2333; No. 2:12-mn-00001-DCN, 2015 U.S. Dist. LEXIS 95889, at *8-9 (D.S.C. July 23, 2015) (in class action regarding defective windows, finding relief including "the possibility of repairs, replacement products, or monetary compensation for consequential damages" constituted "significant relief" for class members).

There are no objections to the pending Motion for Attorneys' fees.

This matter was handled with skill and efficiency by Class Counsel. They achieved a Settlement that confers substantial benefits to the Settlement Class Members despite the obstacles presented by the litigation. This result was made possible by Class Counsel's extensive experience litigating class actions of similar size, scope, and complexity.

Class Counsel conducted substantial investigation into the products at issue and, in the more than two years this litigation has been active, the Parties have aggressively litigated this case, with extensive motion practice and discovery. The parties engaged in extensive settlement negotiations for more than six months, followed by another seven months of negotiating the finer details of the settlement, its ancillary documents, and preparation of the plan for class notice. Further, the complexity of this building product defect case exceeds that of the average product defect case in investigation, legal analysis, negotiations, and settlement structure.

This case involved difficult and novel issues that presented a significant risk of nonpayment.  Plaintiffs faced the risk of being compelled to arbitration, as well as losing at class certification, summary judgment, at trial, or on appeal.  The risks and obstacles in this case are just as great as those in other building product defect class actions and this case would likely have taken years to successfully prosecute, with the risk that there would be no recovery at all.  If this action were not settled and proceeded to trial, the Parties would incur significant additional expenses, including the further payment of expert witnesses and technical consultants, along with substantial time devoted to briefing Plaintiffs' motion for class certification, *Daubert* motions, and summary judgment motions, preparing for and conducting trial, post-trial motion practice, and appeal, all of which could have impacted the recovery in this Action.  The proofs necessary to prevail at trial would be greater than what is required under the Settlement.  This Settlement represents an efficient alternative to what may otherwise be a prolonged and complex class action.

Public policy weighs in favor of granting Plaintiffs' Motion in light of the fact that many Plaintiffs would not have pursued their claims individually.  In situations like this case, where each individual's economic damages may be relatively modest as compared to the cost of necessary expert investigation, obtaining counsel would be extremely difficult.  There are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation.  Therefore, public policy favors adequate awards of attorney's fees to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases.

The fee award is in line with percentage awards in other class actions.  *See Anselmo v. West Paces Hotel Grp., LLC*, No. 9:09-cv-02466-DCN, 2012 U.S. Dist. LEXIS 146618, at *10-11, citing *Kidrick v. ABC TV & Appliance Rental, Inc.*, No. 3:97CV69, 1999 U.S. Dist. LEXIS

23693, at *4 (N.D. W. Va. May 11, 1999) (noting that awards of 30%, 35% and even 50% have been found reasonable.); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *2 (D. Minn. Feb. 27, 2013) (approving attorneys' fees and expenses of $8.5 million in litigation concerning brass plumbing fittings in which common fund settlement was $20 million); *see also* Manual for Complex Lit. (Fourth) § 14.121 (2004) ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund.").

## VI.    THE FEE IS ALSO SUPPORTED BY THE LODESTAR CROSS-CHECK.

As an additional safeguard in evaluating attorney fee awards, the Fourth Circuit has employed the lodestar multiplier cross-check set forth in *Barber*, 577 F.2d at 226 n. 28, which includes the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Class Counsel spent significant time, more than 3400 hours, communicating with Plaintiffs, investigating facts, working extensively with a well-qualified engineer to inspect and perform testing on various samples of Siding, researching the law, preparing well-pleaded complaints and amended complaints, litigating motions to dismiss filed by Plycem, engaging in discovery, and reviewing and analyzing important documents and data produced pursuant to Rule 408 to aid in productive and informed settlement discussions.

These hours were reasonable in light of the complexity and procedural posture of the case, and care was taken to avoid duplication of efforts and appropriately divide tasks amongst Plaintiffs' Steering Committee members.

Building product cases are complex and difficult to litigate, which is reflected in the hours and time spent investigating and litigating this action. The difficult and contingent nature of this case also demonstrates its undesirability. As further discussed herein, there are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation, which is evidenced by the fact that, to Class Counsel's knowledge, no other related class actions were filed elsewhere in the Country. *See Reed v. Big Water Resort, LLC,* 2016 U.S. Dist. LEXIS 187745, at *30-31 (D.S.C. May 26, 2016).

As the Court noted in the Preliminary Approval Order, "[t]he Named Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex class action litigation," and "[t]he extensive proceedings that occurred before the Parties reached the Settlement Agreement gave counsel opportunity to adequately assess the strengths and weaknesses of the claims of the proposed Settlement Class Members, and thus to reach a resolution in a way that adequately accounts for those strengths and weaknesses." ECF No. 25, at ¶¶5, 13.

Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis. Class Counsel received no compensation during the course of this litigation and have incurred significant unpaid fees and costs. Such a substantial risk of nonpayment in return for advancing all the costs and fees weighs heavily in favor of finding Class Counsel's requested award reasonable. *See Reed,* 2016 U.S. Dist. LEXIS 187745, at *27-28.

Class Counsel's hourly rates are conservatively based on adjusted Laffey Matrix rates, which are comparable to those rates charged in South Carolina, despite the fact that this case is national in scope and required construction and product defect class action specialists from across the country who typically charge higher rates.

Courts in the Fourth Circuit have previously determined that using Laffey and Adjusted Laffey rates is appropriate when reviewing lodestar in approving fee petitions. *Brown v. Transurban USA, Inc.*, No. 1:15cv494 (JCC/MSN), 318 F.R.D. 560, 575-77 (E.D. Va., Sept. 29, 2016), *citing In re NeuStar*, No. 1:14cv885 (JCC/TRJ), 2015 U.S. Dist. LEXIS 165320, 2015 WL 8484438, at *10 (E.D. Va. Dec. 8, 2015); *see also Hosch v. BAE Sys. Info. Sols., Inc.*, No. 1:13-CV-00825(AJT/TCB), 2015 U.S. Dist. LEXIS 181158, at *10 n.4 (E.D. Va. Apr. 28, 2015) (approving rates of $650/hour*)*.

Further, these rates are consistent with those for complex class action attorneys operating on a contingency-basis in this District. *See McCurley v. Flowers Foods, Inc.*, No. 5:16-cv-00194-JMC, 2018 U.S. Dist. LEXIS 226234, at *19-20 (D.S.C. Sept. 10, 2018) ("The court finds that the requested fee is appropriate because contingent fee cases hold substantial risk from the start."); *see also In re: Household Goods Movers Antitrust Litigation*, MDL No. 1865, 2:07-cv-02861-DCN, DKT Nos. 101-1, 113 (D.S.C. Jan. 25, 2011 and Mar. 3, 2011) (granting Motion for Award of Attorneys' Fees and Expenses where counsel worked on a contingent basis).

Finally, in comparable complex cases, attorneys are often not just awarded their lodestar, but a multiple thereof. *DeWitt v. Darlington Cnty., S.C.*, No. 4:11-CV-00740-RBH, 2013 WL 6408371, at *13 (D.S.C. Dec. 6, 2013) (stating that "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fees" (citation omitted)); *McCurley*, 2018 U.S. Dist. LEXIS 226234, at *19-20 (citing *Kay Co. v. Equitable Prod. Co.*, 749

F. Supp. 2d 455, 470 (S.D. W. Va. 2010 (stating that multipliers falling between 2 and 4.5 are reasonable)). Here, Class Counsel's lodestar is $2,301,174.00 using Adjusted Laffey of $371-$894 for lawyers and $150.00 for paralegals, and represents a lodestar multiplier of 1.74. Moreover, when using more conservative rates between $300-$800 for lawyers, and $150.00 for paralegals, Class Counsel's lodestar amounts to $2,022,772.00, which is a lodestar multiplier of 1.97. Utilizing either range of rates, the lodestar multiplier is less than 2, and illustrates the reasonableness of Class Counsel's fee request.

## VII.    COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR EXPENSES.

"Courts routinely award reimbursement for expenses incurred to prosecute class actions." *McCurley*, 2018 U.S. Dist. LEXIS 226234, at *21. Plaintiffs' Counsel seeks reimbursement for costs in the amount of $102,771.46, which includes travel time, expert consulting fees, research fees, mediator fees, court fees and other costs. Given the length of the litigation, the Court finds that Plaintiffs' Counsel's request is reasonable and awards reimbursement of costs in the amount of $102,771.46.

## VIII.    SERVICE AWARDS

Plaintiffs' Counsel seek (and Defendant do not oppose) service awards of $5,000.00 for each Settling Plaintiff. "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest" and "[c]ourts around the country have allowed such awards to named plaintiffs or class representatives." *In re MI Windows & Doors Prods. Liab. Litig.,* 2015 U.S. Dist. LEXIS 95889, at *16-17 (D.S.C. July 23, 2015) (granting "modest" service awards of $5,000.00 for each Named Plaintiff) (citation omitted); *see also Savani v. URS Prof'l Solutions LLC*, No. 1:06-cv-02805-JMC, 2014 U.S. Dist. LEXIS 5092, at *28-29 (D.S.C. Jan. 15, 2014) (explaining why incentive awards are appropriate given the "burdensome" task of being a class representative (citation omitted)). "To determine whether an

incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *In re MI Windows & Doors Prods. Liab. Litig.,* 2015 U.S. Dist. LEXIS 95889, at *17 (citing *Kirven v. Cent. States Health & Life Co. of Omaha,* No. 3:11-cv-2149, 2015 U.S. Dist. LEXIS 36393, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015) (citation omitted)).

The Settling Plaintiffs' efforts include initiating and filing the Complaints, providing support to Class Counsel for their claims and attempts to resolve those claims with Plycem, providing documents to support the litigation, maintaining regular contact with Class Counsel regarding the status of their case, and otherwise working with Class Counsel to prosecute and resolve this action on behalf of all Settlement Class Members in the United States.  Finally, Plaintiffs filed their Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Service Awards on January 7, 2021, well in advance of the Final Approval Hearing and deadline for objections, and there are no objections to this Motion, including the request for Service Awards.  Based on the foregoing, the Court finds the service awards if $5,000.00 to each of the Proposed Class Representatives in this action reasonable in recognition of the time and effort they personally invested in this litigation.  Accordingly, the Service Awards for each of the Class Representatives is approved.

## IX.    CONCLUSION

After considering the substantial benefits provided to the Settlement Class by the Settlement, as well as the factors set forth above, the Court finds that the Settlement is fair, reasonable, and adequate and also approves a Service Awards, reimbursement of costs, and fee award to Class Counsel in the amount of $4,000,000.00.

-------------------------------------------------------------------------------------------
### FINAL APPROVAL ORDER
-------------------------------------------------------------------------------------------

On December 18, 2020, this Court entered the Order Conditionally Certifying Settlement Class, Granting Preliminary Approval of Settlement, and Approving Distribution of Class Notice ("Preliminary Approval Order"). Due and adequate notice having now been given to the Settlement Class and the Court having considered: 1) Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement (the "Motion"), along with its accompanying declarations and other materials; (2) Defendants' Memorandum in Support of Approval of Class Action Settlement; (3) the Settlement Agreement and Release and the exhibits attached thereto (the "Settlement Agreement"); 4) Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Class Representatives; and the arguments presented to the Court at the Final Approval Hearing that took place on May 17, 2021, and having concluded that the Settlement is fair, reasonable and adequate, and in the best interest of the Settlement Class, it is hereby ORDERED as follows:

1.      This Order incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement, unless otherwise set forth herein.

2.      This Court has jurisdiction over the subject matter of the action and over all parties to the Action, including all members of the Settlement Class.

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby affirms its determination in the Preliminary Approval Order and finally certifies, for purposes of settlement only, a Settlement Class defined as: All individuals or entities who, as of the Effective

Date, own a single-family house in the United States on which the Siding is installed ("Settlement Class Members").

4.    Excluded from the Settlement Class are: (1) all persons who timely opted out of this Settlement under Federal Rule of Civil Procedure 23; (2) owners of multi-family and commercial buildings; (3) Plycem employees; and (4) the Judge to whom this case is assigned and any member of the Judge's immediate family.

5.    The manner and form of notice (the "Notice Plan") set forth in the Settlement Agreement and approved by the Preliminary Approval Order was initiated and completed with diligence. *See* ECF No. 30-1, Declaration of Steven Weisbrot of Angeion Group LLC Re: Notice. This Notice Plan provided the best notice practicable under the circumstances and satisfies the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

6.    The following Named Plaintiffs are subject to the Settlement Agreement and this order (the "Settling Plaintiffs"): Amanda Lowe, Krista Krouse, Christopher Krouse, Donna Johns, Jameson D. Storm, Andrew Harmel, Antonetta Luongo, and Robert Severance.

7.    The Court finds that the Settlement was reached following meaningful discovery and investigation conducted by Class Counsel. The Settlement is the result of adversarial, arm's-length negotiations between the parties, and the terms and conditions of the Settlement are fair, adequate and reasonable when balanced against the probable outcome of further litigation. At the time the Settlement was negotiated, counsel were reasonably able to evaluate their respective positions. This Settlement will avoid substantial additional costs to all parties, as well as the delay and risks that would be presented by further prosecution of this Action.

8.    In so finding, the Court considered evidence regarding Plaintiffs' case, the risk, expense and complexity of the claims presented, the likely duration of further litigation, the amount obtained in settlement, the extent of investigation and discovery completed, and the

experience and views of co-lead counsel.  The Court also considered the requests for exclusion submitted by Settlement Class Members.

9.    The request for final certification of the Settlement Class is granted pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court makes the following findings:

(a)    There are tens of thousands of members of the Settlement Class, and joinder of all members is impracticable.

(b)    There are questions of law and fact common to the Settlement Class which predominate over any individual question.

(c)    The Settling Plaintiffs' claims are typical of the claims of the Settlement Class.

(d)    The Settling Plaintiffs and their counsel have fairly and adequately represented and protected the members of the Settlement Class.

(e)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

10.    Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Settlement Agreement, as well as the terms and provisions contained herein.  Except as to any individual claim of those persons identified in Exhibit 1, attached hereto, who have submitted valid and timely requests for exclusions from the Settlement Class, and the claims of the Non-Settling Plaintiffs, the Court hereby dismisses all claims asserted by the Settling Plaintiffs and the Settlement Class with prejudice in accordance with the terms of the Settlement Agreement.

11.    The Court appoints Angeion Group to serve as the Claims Administrator and Adjudicator to perform the tasks, responsibilities and duties set forth in the Settlement Agreement.

In the event the Parties seek to appoint a different Claims Administrator or Adjudicatory, they shall notify the Court.

12.    The Non-Settling Plaintiffs shall submit a status report within 90 days after the entry of this Order.

13.    Upon the Effective Date, and as provided in the Settlement Agreement, the Settling Plaintiffs and each of the Settlement Class Members who did not timely request exclusion, by operation of this Judgment shall be deemed to have fully, finally, and forever released, relinquished, and discharged all claims against the Released Persons as set forth in Section 15 of the Settlement Agreement.

14.    Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement: (a) is, or may be deemed to be, or may be used as an admission of, or evidence of, the validity of any claim released herein, or of any wrongdoing or liability of the Released Persons; (b) is, or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. The Released Persons may file the Settlement Agreement and/or this Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15.    The Court grants final approval to the method of allocation and distribution of the Settlement Fund as set forth in the Settlement Agreement.

16.    With respect to Plaintiffs' Motion for Final Approval of Attorneys' Fees and Expenses, the Court finds that this case warrants an award of $4,000,000.00 in attorneys' fees and

$102,771.46 in expenses. The attorneys' fees awarded by the Court shall be allocated to Class Counsel at the sole discretion of Co-Lead Counsel.

17. The Court further approves service awards of $5,000 to each of the Settling Plaintiffs.

18. Service Awards, cost reimbursement, and attorneys' fee shall be paid on the following schedule: (1) Class Representative Service Awards, $2,000,000.00 in attorneys' fees, and reimbursement of costs to be paid within 30 days of the date of this Order; (2) $1,000,000.00 in attorneys' fees on September 15, 2021; and (3) $1,000,000.00 on January 15, 2021.

19. The Court retains continuing jurisdiction over the implementation, enforcement, construction and interpretation of the Settlement Agreement and the Non-Settling Plaintiffs' claims.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**May 21, 2021**
**Charleston, South Carolina**